# Appeal of Farnum T. Fish and Wife, in the Right of the Wife.

A surety on a guardian's bond may, on his petition for review alleging, on oath, errors in such guardian's account, have a rehearing, within the five years mentioned in the act of October 13, 1840, of so much of the account as in such petition is alleged to be error.

Where a person is both executor of a will and guardian of a minor entitled to a portion of the estate under the will, he holds such minor's portion as executor and not as guardian, until he has settled his account as executor in the probate court; until which time his sureties on his guardianship bond are not liable thereon for his neglect to pay such portion.

The fact that one undertakes to act in the dual capacity of executor and testamentary guardian does not lessen his duty as either. Where the funds of the estate were lost through his dereliction of duty as executor, and

NOTE.—The surety of the guardian is liable only for property which comes into the latter's hands as such. Boyer's Estate, 18 Phila. 218; Marck's Estate, 3 Northampton Co. Rep. 29. If so paid, though improperly, liability exists. Hughes's Accounts, 22 Pittsb. L. J. 121. But see Thatcher's Estate, 1 Del. Co. Rep. 321.

thus never came into his hands as guardian, this does not excuse his neglect as guardian; and compensation for his time and trouble in the latter capacity cannot be allowed.

(Decided October 4, 1886.)

Appeal from a decree of the Orphans' Court of Northumberland County vacating a decree of confirmation of the final account of appellant's guardian, and allowing a bill of review, and confirming the report of the auditor to restate said account. Reversed.

Abraham Shipman was appointed by the last will and testament of Jesse M. Simpson as executor of the will, and guardian of Mary V. Simpson, the only child of the testator. By the terms of the codicil to his will, the guardian was required to enter into a bond, on taking letters of guardianship, in the sum of $10,000 with one or more approved sureties. The will was probated November 3, 1871, and letters testamentary granted to the executor therein named. On March 12, 1873, Ira T. Clement became surety on the guardian's bond.

Abraham Shipman died August 8, 1878, without having filed an account either as executor or guardian under said will. August 14, 1878, Ira Shipman was appointed his administrator, and December 4, 1878, he filed the first and final account of Abraham Shipman, executor of Jesse M. Simpson, deceased, which was confirmed nisi January 8, 1879, and absolutely March 12, 1879. This account shows a balance on its face of $3,517.90 in the hands of the guardian at the time of filing the same.

November 14, 1879, Ira T. Clement, surety on the guardian's bond, filed a petition in the orphans' court for a bill of review of the guardian's account, alleging the facts in the first six paragraphs of his petition substantially as above set forth; and further, that he did not know that said account had been filed; that there were manifest errors in the account which ought to be corrected; that, under the terms of the will of the testator, no funds came into the hands of his executor for which he was bound to account as guardian.

To this petition an answer was filed by George Hill, the guardian of Mary V. Simpson, and Ira Shipman, administrator of Abraham Shipman, deceased, setting forth that the said account had been duly filed and regularly confirmed by the court, with actual and legal notice to the said Ira T. Clement, surety, and that there was no new evidence or matter since the filing and confirmation of the said account that could not have been had by the use of due diligence before the absolute confirmation of the same, and denying that the said Ira T. Clement had any right whatever, as a matter of law or *ex gratia,* to a bill of review.

The Honorable Franklin Bound was appointed master *pro hac vice* to take evidence, etc. He found the facts as alleged in the first six paragraphs of the petition substantially as set out above, and further reported, *inter alia,* as follows:

The matters contained in the seventh paragraph of the petition of Ira T. Clement for a review are denied by Ira Shipman and George Hill, Esq., in their answer. Paragraph 7 is as follows, to wit:

"Seventh. Your petitioner represents that he knew nothing of the filing of the above-stated account of the guardianship of Abraham Shipman until after its final confirmation; and further represents that there are manifest errors in said pretended guardian's account, which he specifically sets forth as follows:

"A. The said account is incorrect, in that the said executor as guardian is charged with the whole balance in the account of the said Abraham Shipman, as the executor of said Jesse M. Simpson, deceased, $6,390.11; while said Abraham Shipman, executor, is charged with $2,200.69, being for rent received during the lifetime of the said executor as executor of said Jesse M. Simpson, in his executor's account.

"And also the further sum of $2,954.86, the proceeds of sale of the real estate made by the said Abraham Shipman, after the death of the testator, as executor of said testator, and which came into and remained in his hands as executor, and not as guardian, until the death of Abraham Shipman, executor.

"B. For that the said account is incorrect in that the said accountant has assumed to charge in the said account, as guardian,

in said balance the sum of $550.08, being for rents received by the said executor prior to the 12th day of March, 1873, the date of the bond upon which your petitioner is surety.

"C. For that the said account is incorrect in that the said accountant has assumed to charge in the said balance of executor's account of $6,390.11, the sum of $2,507.08, being the proceeds of the real estate sold by the said executor and received by him prior to the 12th day of March, 1873, the date of the bond upon which your petitioner is surety.

"D. For that the said account of Abraham Shipman, guardian, is incorrect in that his administrator, Ira Shipman, charges in the said guardian's account the sum of $6,390.11, the balance found due from him as executor, as having been paid to himself as guardian of Mary V. Simpson, said account never having been paid, when in fact not one dollar was ever paid by Abraham Shipman, executor of the last will and testament of Jesse M. Simpson, deceased, to him as guardian under said will.

"E. The filing of the account of Abraham Shipman, executor of Jesse M. Simpson, and the filing of the account of Abraham Shipman, guardian of Mary V. Simpson, upon the same day, to wit, the 5th day of December, 1878, is illegal and improper, the same person being executor and guardian.

"The account as executor should have been first filed and the balance in his hands as executor liquidated and determined before the account as guardian could be properly considered by the court.

"F. The account of Abraham Shipman, guardian of Mary V. Simpson, is incorrect in that the said account is charged with the sum of $6,390.11, as having been received by him from the executor of Jesse M. Simpson, deceased, when no part of the same had ever been received by him as such guardian. The said Abraham Shipman, being executor and guardian under the will, could not be considered as holding any part of the assets in the capacity of guardian until his account as executor had been settled at the probate office, in which he has been credited as executor with the balance which he held as guardian.

"G. For that the will of the said Jesse M. Simpson, deceased, makes the said Abraham Shipman, as his executor, a trustee

under his said will, directing him, in the event of the death of Mary V. Simpson, his daughter, to convert his whole estate, real, personal, and mixed, into money, and to distribute the same among the legatees named in his said will; that the trust so created continues until the said Mary V. Simpson should arrive at the age of twenty-one years, or until her death; that at the time of the filing of the account of Abraham Shipman, executor, by his administrator, Ira Shipman, the said daughter was neither deceased nor of the age of twenty-one years, and that it was error in the said Ira Shipman, administrator of the said Abraham Shipman, executor, to undertake to break the said trust, or to undertake to turn over money from the hands of Abraham Shipman, the executor, then deceased, into the hands of the said executor as guardian, in violation of the will of the said testator, or to assume that any money ever had been turned over by the said executor to himself as guardian under the said will.

"Your petitioner, therefore, charges and avers that there are manifest errors in the said first and final account of Abraham Shipman, guardian of Mary V. Simpson, minor child of Jesse M. Simpson, by Ira Shipman, administrator, filed and confirmed, in the above estate, and which if allowed to remain great injustice will be done to your petitioner, surety as before stated; and he further states that it was not until after the confirmation that your petitioner became aware of the existence of said errors, and therefore, was not in a position to except thereto; for all of which errors and imperfections in said account and the said decree of confirmation, your petitioner has brought this his petition for a review, and humbly conceives that he should be relieved therein; to the end, therefore, that the petitioner may have the privilege of a rehearing of so much of said account as is hereinbefore alleged to be in error, and may have such relief as equity and justice may require," etc., etc.

Then follows a prayer for a citation upon Ira Shipman, administrator, etc., and upon all persons interested, to appear in court, etc. In accordance with the prayer of the petition, November 14, 1879, a citation was awarded against said Ira Shipman, administrator, etc., of Abraham Shipman, who was the

guardian of Mary V. Simpson, minor, and against Lloyd T. Rohrbach, administrator *de bonis non cum testamento annexo* of Jesse M. Simpson, deceased, and against Geo. Hill, Esq., guardian of Mary V. Simpson, etc., commanding them to appear at an orphans' court to be held at Sunbury, etc., January 5, 1880, to answer the above bill or petition, or show cause, etc. All the parties named were regularly served with notice of the citation, etc.

An answer to the petition, as already stated, was filed September 7, 1880, by Ira Shipman, administrator, and George Hill, Esq., guardian, etc.    The answer admits the truth of the matters of fact averred in the six paragraphs of the petition, and goes on to say, among other things, as follows:

"First. That the said Jesse M. Simpson died on the — day of October, 1871, and that his said daughter is his only issue that survived him, and was at the time of his death, and still is, his only heir and next of kin, and that she was born on the 2d day of August, A. D. 1862, and that, after the death of the said Abraham Shipman, to wit, on the 8th day of August, A. D. 1878, your honorable court appointed the said George Hill guardian of her person and estate.

"Second. Your respondents each deny that the said Ira T. Clement knew nothing of the filing of the account of the guardianship of the said Abraham Shipman, until after its final confirmation, as is stated by the said Ira T. Clement in the 7th paragraph of said petition; but, on the contrary, each says that notice of the filing of the said account was duly given by advertisement, according to law, and that they have been informed, and each verily believes that he can prove, if it shall be necessary or important, that he, the said Ira T. Clement, had had actual notice of the filing of the said account in sufficient time to enable him to file any exceptions thereto that he wished, before the said final confirmation of the said account; and they each also say that they are advised, by their respective counsel learned in the law, that the several pretended errors in the said account alleged in the 7th paragraph of the said petition, and respectively therein specified as A, B, C, D, E, and G, or any of them, are not errors or mistakes of either law or of fact.

"And your respondents, further answering, each say that upon the probate of the last will and testament of the said Jesse M. Simpson on the 3d day of November, A. D. 1871, the said Abraham Shipman became the testamentary guardian of the said Mary V. Simpson, then between nine and ten years of age, and that the needs and duties of this trust were immediate; and, there being no question as to the sufficiency of the testator's estate for both trusts, the performance by Abraham Shipman of his duties as guardian were not, by the provisions of the said will, or by the law of the land, postponed to his performance of his duties as executor; and that he, the said Abraham Shipman, immediately before his death was liable as guardian, as aforesaid, to account for all the estate of the said Jesse M. Simpson which he then had in his hands or possession, or which he ought then to have had in his hands or possession; and also that the said Abraham Shipman, on the 18th day of January, A. D. 1878, presented his petition to your honorable court as testamentary guardian of the said Mary V. Simpson, setting forth his appointment as such guardian by the said will of the said Jesse M. Simpson, and stating that the value of the estate willed to the said Mary V. Simpson was then about $10,000, and praying the court to direct a suitable periodical allowance out of the said estate for her support and education, as directed in the said will, and that the truth of the facts set forth in the petition was verified by the affidavit underwritten the same; that your honorable court thereupon directed that he, the said guardian, should not expend more than the sum of $500 for the purpose mentioned in said petition, unless otherwise directed by your honorable court, —a copy of which said petition of the said Abraham Shipman, and of the order of the court, aforesaid, is attached to this answer; and each of your respondents prays that the same may be considered a part of his answer; and each of your said respondents denies that there is any other matter, cause, or thing in the said petition of the said Ira T. Clement contained, material or necessary to be answered by the respondents, and which is not herein and hereby answered, confessed, traversed, and avoided or denied, is true to his knowledge and belief; and they each respectfully pray, etc., that the said petition of the said Ira T. Clement be refused and dismissed," etc., etc.

The foregoing answer raises several important issues of fact and law, questions of law which have never yet been authoritatively passed upon or decided by the supreme court of Pennsylvania or any subordinate court of this state, so far as we have been able to learn after careful investigation. In the 7th paragraph of his petition for a review Ira T. Clement avers "that he knew nothing of the filing of the above-stated account of the guardianship of Abraham Shipman until after its final confirmation," etc., and gives this as one of the reasons for failing to file exceptions to said account, etc.

This statement is denied by Ira Shipman and George Hill, Esq., under oath, in their answer filed to said petition. In the second paragraph of their answer above quoted, they each "deny that the said Ira T. Clement knew nothing of the filing of the account of the said Abraham Shipman until after confirmation, as is stated by the said Ira T. Clement in the 7th paragraph of his said petition; but, on the contrary, each says that notice of the filing of the said account was duly given by advertisement according to law, and that they have been informed, and each verily believes, that he can prove, if it shall be necessary or important, that he, the said Ira T. Clement, had also actual notice of the filing of the said account in sufficient time to enable him to file any exceptions thereto that he wished before the said final confirmation of the said account," etc.

Here is a square denial and a direct challenge to the proof, and, if this branch of the case rested upon the petition and answer alone, the weight of testimony would be against the petitioner. But witnesses are called; George Hill, Esq., a high-minded, intelligent man, an honorable member of this bar, one of the respondents, and Ira T. Clement, the petitioner, are both examined as witnesses in regard to the fact of notice. Mr. Hill, in his testimony, after narrating the fact that Ira T. Clement, and he, on at least two occasions prior to his death, went to see Abraham Shipman in regard to Mary V. Simpson's interests, and Mr. Clement's liability on Shipman's bail bond as guardian of Miss Simpson, rumors of Shipman's insolvency being afloat, testified as follows:

"Shipman died shortly afterwards, and I, through the solici-

tation of Mary, and Judge Jordan, and others of her friends, agreed to take the appointment as her guardian. I shortly afterwards called upon Mr. Clement and urged the necessity of having an account stated by the administrator Shipman, he knowing, as I did, that the estate of Shipman was entirely insolvent at that time; and at various interviews I had with Clement before the filing of the account he invariably admitted his liability, and agreed to settle with me as soon as the balance could be ascertained. I urged Mr. Reimensnyder, who was of counsel for the administrator, to have an account filed of Shipman's guardianship, so that I might close up the matter with Mr. Clement as Shipman's bail. The account was filed. I am not sure whether it was submitted to me before filing or not. I discovered a balance according to the guardian's account in the hands of Shipman, as guardian, of $3,517.90. After filing of this account I spoke to Mr. Clement on several occasions and urged him to settle this balance, and he invariably told me that he would. The last conversation that I had with him that I recollect of was in the hall of the courthouse where we accidentally met, and I called his attention to the necessity of having this matter closed up. He asked me the question, how I wanted it closed. I told him that the interest on the amount would be all that would be required as long as I was her guardian, and suggested that he should give me a judgment for the purpose of closing the thing up. I am not sure whether this last conversation took place between the date of filing the account and confirmation nisi, or between the date of the nisi confirmation and the confirmation absolute; but I am certain that it was before the confirmation absolute."

The testimony of Mr. Hill is objected to by counsel for petitioner, because the witness is incompetent, and because irrelevant.

Your master is of opinion, and so rules, that the testimony of Mr. Hill is both competent and relevant to the issue before him. This testimony, therefore, standing uncontradicted in any material respect, must be accepted as the facts in regard to the question of notice. It is true that Ira T. Clement in his testimony says: "I don't recollect of any conversation with Mr.

Hill in the hall of the courthouse; I recollect of having a talk with Mr. Hill in front of his office, etc." Mr. Hill's office is on the opposite side of the street, across the public square from the courthouse in Sunbury.

Surely the fact that Mr. Clement "has no recollection" of the conversation so succinctly detailed by Mr. Hill is not such a contradiction as the law requires in so important a matter. Your master finds as facts, therefore, that Ira T. Clement, who lived within a stone's throw of the register's office at the time, had not only had such legal notice of the filing of the account in question as the law contemplates, by publication, but also had actual notice of the same from George Hill, Esq., the then guardian of Mary V. Simpson, at least before the final confirmation of said account and the decree of the orphans' court thereon.

In view of all the foregoing findings of fact and some others which will be noted hereafter, it is learnedly contended by counsel for respondent, on the authority of Green's Appeal, 59 Pa. 235; Hartman's Appeal, 36 Pa. 70, and Stevenson's Appeal, 32 Pa. 318, that a bill of review is not allowable in this case; that a bill of review as a matter of right can be had only: (1) For errors of law appearing in the body of the decree; (2) for new matter which has arisen after the decree; and (3) it may be allowed *ex gratia* for new evidence as to facts subsequently discovered which could not have been procured by due diligence before.

It is contended that neither of these conditions exists in this case; that there is no error appearing in the body of the decree, nor on the face of the account; that the debtor side of the account consists of but two items, to the first of which there is no objection in the petition for a bill of review. The second is objected to in the whole. This is stated to be the balance of the executor's account of the estate remaining after the payment of all the debts, legacies, and expenses of administration.

It becomes important, therefore, to know all the facts in the case, including those already found upon which these contentions are predicated. The debtor side of the guardian account in controversy the master finds is as follows:

"The first and final account of Abraham Shipman, guardian of Mary V. Simpson, minor child of Jesse M. Simpson, deceased, by Ira Shipman, his administrator."

The accountant charges Abraham Shipman, guardian of Mary V. Simpson, minor child of Jesse M. Simpson, deceased, as follows:

Dr:

1878, July 14, to cash received from S. P. Wolverton, administrator of Mary Simpson, deceased, Mary V. Simpson's share of said estate.. $    250.00
1878, to amount received from the executor of the estate of Jesse M. Simpson, deceased.......... 6,390.11

Total ................................. $6,640.11

That the foregoing is neither a very accurate nor satisfactory statement of account, whereby to charge the petitioner, Ira T. Clement, surety of Abraham Shipman in his guardian bond, with so large a sum of money, can hardly be questioned. Was Mr. Clement in duty bound to file exceptions to this account; and, having failed and neglected to do so, is he deprived of the right to a bill of review as prayed for by him? If he is, as contended for by counsel for respondent, both as matter of law and fact, then no matter how great a hardship to Mr. Clement, this case is at an end.

The act of assembly of October 13, 1840, which authorizes a bill of review in cases of this kind, provides that, "upon petition of review being presented by such executor, administrator, or guardian, or their legal representatives, or by any person interested therein, [within five years, etc.,] alleging errors in such account, which errors shall be specifically set forth in said petition of review, and said petition and errors being verified by oath or affirmation, said orphans' court shall grant a rehearing of so much of said account as is alleged to be error in said petition of review, and give such relief as equity and justice may require, by reference to auditors, or otherwise," except in cases where the balance found due shall have been actually paid or discharged.

In the case of Bishop's Estate, 10 Pa. 469, Judge COULTER gave this act a literal, strict, and stringent construction, considering the act peremptory on the court to grant the bill of review, without the exercise of judicial discretion.

It has since then been decided by the supreme court in a number of cases, among others, Hartman's Appeal, 36 Pa. 70, that the decision in that case went too far; of course it was harmless in that case "because the mistake and errors in the case were apparent on the face of the account."

It was held in Bishop's Estate, that "sureties for administrator may have a bill of review, where the administrator has charged himself in his account with rents and profits, and the proceeds of the realty; and it is no objection that the accounts have been settled by auditors, and a distribution awarded, and actions brought by the creditors of the estate against the sureties."

Your master is of opinion that the case in hand is much stronger than that of Bishop's Estate, and that Ira T. Clement, in point of law and in justice and equity, is entitled to his bill of review. No unreasonable time elapsed from the confirmation of the account, March 12, 1879, to the time of filing his petition for a review, November 14, 1879. No person was, or could have been, injured by the delay in this matter. Indeed, there may have been good reasons for Mr. Clement's failure or refusal to file exceptions to the account. It cannot be doubted, under the evidence, that for some time prior to Mr. Shipman's death rumors of his insolvency were afloat in the community, and that Mr. Clement was aware of these rumors, and that, by the advice of counsel, he endeavored to obtain some sort of security from Shipman on account of his supposed liability on the guardian bond of $10,000, given by Shipman as testamentary guardian of Mary V. Simpson.

In fact, it is in evidence, under objection by counsel for Mr. Clement, that he, Clement, in Shipman's lifetime, obtained a judgment note from Shipman dated the 9th day of July, A. D. 1878, for $3,500 as collateral security. Mr. Clement, who is called as a witness by counsel for respondent, in speaking of this judgment note, entered in the court of common pleas of North-

umberland county, to No. 149, August term, 1878, for $3,500, testifies as follows:

"It was given for security that I had gone for him. It may have been in the Conrad matter, and it may also have been on this Simpson matter. I can't state now exactly. I was security for both for Shipman."

Abraham Shipman died on the — day of —, 1878. After his death, at least, it was well known that his estate was hopelessly insolvent. His estate was in progress of settlement, and it may have been considered by Mr. Clement very important to Mary V. Simpson's interests, or to those interested in Simpson's estate, that the balance due from Shipman to Simpson's estate should be ascertained and secured, if possible, as per the guardian's account filed by Ira Shipman, administrator of Abraham Shipman.

So far as Abraham Shipman is concerned, there can be no question that the balance of $3,517.90 as ascertained by the guardian's account filed, is justly due and owing to Mary V. Simpson, or, in the event of her death before reaching the age of twenty-one years, would have been due and owing to the residuary legatees named in the will. However, as it turned out, it proved to be a matter of no importance, for Mr. Clement never realized a farthing upon his judgment of $3,500 against Shipman, and in all human probability never will.

It is evident, however, that this was not due to any fault or neglect on the part of Ira T. Clement to save himself harmless, and at the same time, if possible, to secure Simpson's estate against loss. For his vigilance in this regard Mr. Clement is to be commended, rather than censured for supineness. That Abraham Simpson's estate was utterly insolvent at the time these accounts as executor of Jesse M. Simpson, deceased, and as testamentary guardian of Mary V. Simpson, were filed by his administrator, Ira Shipman, cannot be questioned.

What is meant, then, by the charge on the debtor side of the guardian account, to wit: "1878, to amount received from the executor of the estate of Jesse M. Simpson, deceased, $6,390.-11 ?" Who received this money? Surely, Ira Shipman, the accountant, does not wish it to be understood that he received it.

If he does, then he and his bail on his administration bond are liable, and not Mr. Clement. Or does Ira Shipman, the accountant, wish it to be understood that his father, Abraham Shipman, as testamentary guardian of Mary V. Simpson, received this money from Abraham Shipman, as executor or trustee for the residuary legatee? If this is meant, then where is the evidence of it? No book, nor account, nor memorandum kept by Abraham Shipman in his lifetime, or by any person for him, has been given in evidence before the master, tending to prove the fact.

Nor is there any evidence produced of an account of moneys kept by Shipman, in his lifetime, to the credit of his ward, Mary V. Simpson. And there is no evidence going to show that and moneys belonging to the estate of Jesse M. Simpson were ever deposited by Abraham Shipman to the credit of said estate, or to the credit of his ward, Mary, or to his own credit as trustee, in any public depository, bank, or saving institution of any description. In the absence of some such proof, it is fair to presume that no such account was ever kept by him, either as executor or guardian.

In this connection, it is but fair to add, however, that on the 18th day of January, 1878, Abraham Shipman presented the following petition in the orphans' court of Northumberland county, to wit:

The petition of Abraham Shipman, testamentary guardian of Mary V. Simpson, a minor, and only child of Jesse M. Simpson, late of Sunbury, Pa., respectfully represents: That the said Jesse M. Simpson died on or about the —— day of ——, A. D. 1871, leaving the said Mary V. Simpson to survive him, and having first made his last will and testament, wherein he directed that, after his funeral expenses and just debts and the several bequests therein contained had been settled, the remainder of his estate, real, personal, and mixed, shall go to the said minor, Mary V. Simpson. That by said will your petitioner was appointed testamentary guardian of said Mary V. Simpson. That the testator in said mentioned will made the following provisions for the support and education of his said minor child, to wit:

"Seventh. I appoint Abraham Shipman guardian of my said daughter Mary until she arrives at the age of twenty-one years, and I intrust to him her moral and religious training and education. It is my will, and I desire that my said daughter receive such an education as is fitting in her circumstances, and if the interest of the money coming into the hands of my executor and the rents of my real estate are insufficient for that purpose, it is my will and desire that as much of the principal in addition as may be necessary be expended.

"That said will has been duly proved in the register's office before the register of said county, and entered of record on the 3d day of November, A. D. 1871.

"That the value of the estate willed to said minor is about $10,000.

"That the said minor is about fifteen years of age. Your petitioner therefore prays Your Honor to direct a suitable periodical allowance out of the said estate for her support and education as directed in said will, etc."

Your master finds that, in accordance with the prayer of the petition, a periodical annual allowance of $500 was decreed. There is no account stated or made part of the petition, and nothing therein contained goes to show how much, if any, money or effects were in his hands as guardian at that time. The petition simply recites that Mary is an only child, and "that the value of the estate willed to said minor is about $10,000." Is that such a statement of account, in the absence of a decree of the orphans' court after account stated and filed in the register's office, as will fix the bail of Shipman in his guardian bond? We think not. Something more than this is required. In brief, does the petition furnish any satisfactory evidence that there was a single dollar of funds in Shipman's hands as testamentary guardian, at the time his petition was presented in court? If it does we have failed to discover it.

In the absence of an inventory of his ward's estate filed in the register's office by Abraham Shipman, in his lifetime, charging himself with moneys or effects belonging to his ward, and in the absence of any proof of an account kept by him of any money or effects belonging to his ward (except the $250 paid to him by S.

P. Wolverton, for his said ward), and in view of the fact that no account was ever filed by Abraham Shipman in his lifetime, as executor of Jesse M. Simpson, deceased, in the register's office, showing a balance of funds, if any, in his hands as such executor, your master cannot see how his surety, Ira T. Clement, can be held in the bail bond of Shipman, testamentary guardian, etc.

That Abraham Shipman had funds in his hands as executor of Jesse M. Simpson's estate is not to the purpose. A certain portion was realized from the sale of testator's real estate, and certain other portions from the rents, issues, and profits of real estate that he was not empowered to sell.

In the seventh clause of the will provision is made for the "moral and religious training and education" of his daughter, and recites that, "if the interest of the money coming into the hands of my executor," not into the hands of the testamentary guardian, "and the rents of my real estate, are insufficient for that purpose, it is my will and desire that as much of the principal, in addition, as may be necessary, be expended." If, then, the funds were received by Shipman, as executor, in his lifetime, in the absence of satisfactory proof that they ever passed into his hands as guardian, the presumption is a strong one that they were wasted and squandered by him as executor, and not as guardian. How, then, can Mr. Clement be held liable for the same as surety on Shipman's guardian bond of $10,000 ?

It must be borne in mind that the account of Abraham Shipman as executor of Simpson's estate and his account as testamentary guardian of Mary V. Simpson were both filed by Ira Shipman, his administrator, on the same day, to wit, December 5, 1878, and were both confirmed absolutely on the same day, to wit, March 12, 1879; that the balance ascertained from the executor account, to wit, "balance paid to the guardian, $6,390.-11," as therein stated, was transferred bodily to the debtor side of the guardian account. When this was done, in point of fact, there wasn't a dollar of funds in the hands of Abraham Shipman, nor of his administrator, who stated the account belonging to the estate of Jesse M. Simpson, deceased. It had all been wasted or misappropriated by Shipman in his lifetime.

Again; it must be remembered that, under the terms of Jesse

M. Simpson's will, his daughter, Mary, was not to come into the enjoyment of the corpus of her father's estate until she arrived at the age of twenty-one years; that, if she died before that period, the entire estate then left was to go to certain residuary legatees named in the will; that at the date of the confirmation absolute of said account, March 12, 1879, and the decree of the orphans' court thereon, finding a balance of $3,517.90 due to Mary V. Simpson from Abraham Shipman as testamentary guardian, the said Mary had not attained the age of twenty-one years by four years and five months, and, if she had died in the meantime, would not have been entitled to any portion of the corpus of the estate, if it had not been previously squandered. Was she entitled to such a decree, then, any more than the residuary legatees would have been?

But now it is argued that Miss Simpson is of full age and the decree of the court is all right. That is not the question that Mr. Clement is interested in. In view of such a decree at the time it was made, was Ira T. Clement entitled to his bill of review? If he was so then, he is just as much entitled now. Your master is of the opinion that the account of Abraham Shipman, as executor, should have first been filed in the register's office and the balance in his hands, as executor, if any, liquidated and determined before the guardian's account could be properly considered by the court. Without, therefore, passing upon the question raised as to the surety's liability on the guardian bond for the price of the real estate sold, and the rents, issues, and profits thereof received by the executor before the guardian bond was executed and filed, your master proceeds to consider the legal status of the case as affected by our own and the decisions of neighboring courts. Was it necessary that an account should have been first stated and filed by Abraham Shipman, as executor, and a balance ascertained by a decree of the orphans' court, before the liability of Ira T. Clement became fixed as surety in the bond given by Shipman as testamentary guardian of Mary V. Simpson?

As before remarked, there is no authoritative utterance by our supreme court on the subject. The nearest approach to it that we can find is a *dictum* of His Honor, Judge PAXSON, in Mus-

selman's Appeal, 13 W. N. C. 71: "No personal action will lie against the executor of William P. Waugh, for any portion of the residuary estate, or for a legacy charged thereon, until it be first shown that there is a residuary estate, and that the same passed into the hands of John Waugh as trustee thereof. That John Waugh received assets of the estate of William P. Waugh is not to the purpose. He received them as executor; his responsibility for said estate is as executor, and not as trustee of the residuary estate."

In Van Dyke's Appeal, 31 Phila. Leg. Int. 69, it is ruled that "a trustee of a portion of a residuum of an unsettled estate cannot be held to account or be sued for the same by the *cestui que trust* until the estate has been settled and the fund has been set apart and received by him as trustee." See also 2 Wms. Exrs. pp. 1506, 1507, and note M.

This whole subject has been frequently adjudicated by the supreme court of Massachusetts, and the law well settled in that state, by a long train of decisions. The first case that we call the court's attention to is Conkey v. Dickinson, 13 Met. 54 *et seq.*, and others. The syllabus of the case is as follows: "When the same person is executor of a will and guardian of a minor to whom a legacy is given by the will, he holds the amount of the legacy in his capacity of executor, and not as guardian, until he settles an account of his administration in the probate court, crediting himself as executor with the legacy, and charging himself therewith as guardian. Until such account is allowed by a decree of the probate court, an action cannot be maintained against him and his sureties on his guardianship bond, for neglect to pay the legacy; but an action may be maintained against him and his sureties on the bond given by him as executor."

The parties submitted the case to the court upon an agreed statement of facts in substance as follows:

"Aaron Dickinson in 1834 was duly appointed guardian of Medad D. Smith, who was then twelve years old, and who came of age in 1843. The bond declared on was duly executed by the defendants. In 1839, while the guardianship duties of the said Aaron continued, Sally S. Dickinson died, leaving a will in which, after certain legacies to divers persons, said Medad D.

Smith, the ward, was made the residuary legatee; and said Aaron Dickinson was made executor of said will, which was duly proved and allowed. Letters testamentary were issued to said Aaron, and he gave bond for the faithful discharge of his duties as such executor. On the first Tuesday of July, 1840, said executor returned his first and only account as executor of said will, from which there appeared to be a balance in his hands, as executor, of $451.50. After this action was commenced, to wit, on the 25th of September, 1846, said Aaron filed his account of guardianship, in which he did not charge himself with said legacy; and a hearing and examination of the guardian were had, and the judge of probate passed a decree thereon, from which said guardian appealed. At this hearing and examination Sylvester Maxwell, Esq., testified, in substance, as follows: That he, as attorney of said Medad D., called on said Aaron, in the spring of 1845, for payment of what was due from him to said Medad D., and for his account; that said Aaron soon after presented to the witness a paper as his account of guardianship, in which he charged himself with the legacy given by Sally S. Dickinson to said Medad D., amounting to $365.64 and interest thereon for five years, $109.65. These sums, with other items of credit to said Medad D. in this account, amounted to $1,275.93, and the charges against him were $624.68, leaving a balance against said Aaron of $651.25. That the witness and said Aaron compared this account with one which the said Medad D. had made out, in which said Aaron was charged with said legacy, as $424, and in which the balance against said Aaron was $722.36. That said Aaron, in looking at this account made out by said Medad D., said it was correct, as taken from his (said Aaron's) book. That the witness drew off the said account in proper form, and said Aaron afterwards looked at it and signed it as guardian, and took it away for the purpose of presenting it to the probate court, without suggesting that he held the funds as executor and not as guardian."

Upon this statement of facts, which are certainly much stronger in every respect than the case in hand, the court held as follows:

"It was argued in the present case for the legatee that the

guardian is to be held liable to account for the legacy because it was included in a paper intended to be his account of guardianship. This intention is denied by the guardian; but we do not consider the fact material. There could be no transmutation of the assets, until the account was allowed by the probate court so as to charge the guardianship sureties. If such an account had been rendered, it may well be doubted if it ought to be allowed, unless the guardian would give a new bond. If his sureties, on his bond as executor, were liable, it was not competent for him to transfer that liability to his sureties on the guardianship bond. And it seems clear that the former sureties were liable. The executor had a right to retain the assets for four years (Rev. Stat. chap. 66, § 3); and while he thus held them he appropriated them to his own use, which certainly made him and his sureties on his bond as executor liable. The assets have never been in possession of the guardian, and this was caused by the misapplication of them by the executor. Nor are we aware of any means by which the guardian, as such, could have obtained possession. He could not sue himself, and he is not chargeable on the ground that an executor or administrator is chargeable for a private debt which he owes the estate. [That principle is grounded on the necessity of the case, and no such necessity exists in the present instance]. The legatee might have proceeded against the executor and his sureties; and there seems to be no necessity nor reason for proceeding against the sureties of the guardian."

In Hall v. Cushing, 9 Pick. 395, the same court holds as follows: "It has been argued that, when the testator's debts were all paid, the duties of the executor terminated; and that thereupon, by operation of law, there was a transmutation of property in the assets to the executor in his capacity as trustee to the minor children. This trust, however, was confined to the support and education of the children, and the income of the funds was alone appropriated for these purposes. The executor had a right to retain the funds for the purpose of distributing them among the children, when they should respectively become of age. If another person, therefore, had been appointed trustee, he could only have a right to demand the income of the funds

from the executor. And again; before there could be any transmutation of property, as contended for by the defendants' counsel, the executor must have settled his final account of administration in the court of probate, in which the balance due from him as executor should be allowed to his credit, as being retained by him in his capacity as trustee for the minor children. And such an allowance would not, it is to be presumed, be made by the judge of probate, without first requiring him to give bond for the faithful performance of his duties as trustee. The case of Wyman v. Hubbard, 13 Mass. 232, may be considered, perhaps, as somewhat opposed to this reasoning, but nothing in opposition was expressly decided in that case."

The only departure from the rule requiring an administration account to be first filed, and a decree of the probate court thereon, in order to fix the liability of sureties in cases like the present, recognized by the courts of Massachusetts, is stated in Newcomb v. Williams, 9 Met. 534, as follows: "What would amount to such change of capacity when the same persons are executors and trustees, so as to exonerate the sureties on the executorship bond, would depend on circumstances. If by the constitution of the trust they were exempted from giving bonds, . . . it would probably be held sufficient, as no actual payment can be made to one's self, to show by any authoritative and notorious act that they had elected to act in the capacity of trustee; as, for instance, if they claim a credit in their executorship account filed in the probate office for a sum held by themselves as trustees, and also file an inventory or account charging themselves with the like sum as trustees."

As already stated by the master, no such authoritative and notorious acts can be found by him under the evidence, going to show that there was a transmutation of assets from Abraham Shipman, executor, to Abraham Shipman, testamentary guardian, etc., in his lifetime. In the absence of such proof of transmutation of assets, can the account of guardianship, as stated by Ira Shipman, administrator of Abraham Shipman, after his father's death, be regarded as anything more than a declaration of what he supposed was his father's intention in regard to a matter of which he is not supposed to have any personal knowledge?

In Miller v. Congdon, 14 Gray, 114, the same court held: The mere determination of the executor in his own mind to appropriate property or securities in his hands as such to himself as trustee under the will is not such a setting apart as will discharge him as executor and charge him as trustee.

Under all the circumstances of the case your master is of the opinion that Ira T. Clement, the petitioner, is entitled to his bill of review as prayed for by him.

All of which is respectfully submitted.

On exceptions by Mary V. Simpson to this report the case was heard before ROCKEFELLER, J., who delivered the following opinion:

The learned master's report of the facts found by him, and what he has said in his very able opinion, is perhaps sufficient. There was no account filed by Judge Shipman, in his lifetime, as executor of Jesse M. Simpson, deceased, showing a balance in his hands after administering the estate and payment of legacies; nor was there any evidence before the master, of any facts tending to show that he had appropriated any of the funds to himself in the capacity of guardian. Indeed, except for the purpose of education, he could not have done so, for at the time of his death Miss Simpson was only about seventeen years of age, and the absolute right to any part of her father's estate, real, personal, or mixed, except so much thereof as was necessary for her education, depended wholly upon her living to attain the age of twenty-one years.

As was said in the case of Hall v. Cushing, 9 Pick. 395: "If another person, therefore, had been appointed trustee, he could only have a right to demand the income [or in this case so much of the principal in addition as was necessary for educational purposes under the will] of the funds from the executor." It is true, under the facts in the present case it was necessary to allege and show that the error complained of was apparent on the body of the decree, or on the face of the account, as there was no new matter that had arisen after the decree, nor new evidence as to facts subsequently discovered, which could not have been

discovered by due diligence before. The item complained of reads as follows:

1878, to amount received from the
executor of the estate of Jesse M.
Simpson, deceased . . . . . . . . . . . . . . . . . . . . . . . $6,390.11

The learned master had before him the will of Jesse M. Simpson, deceased, which showed him that the minor was not entitled to any part of the estate unless she lived to be twenty-one years of age. He also had before him the two accounts filed by Ira Shipman, administrator of Abraham Shipman, deceased, who was the executor and also testamentary guardian. Those accounts were filed on the same day. The account as executor showed a balance in the hands of Abraham Shipman of $6,390. This balance was simply transferred by the above-stated item in the debtor side of the account as guardian.

Doubtless the administrator, who was attempting to file both the accounts of Abraham Shipman, as executor of Jesse M. Simpson, deceased, and as guardian of Mary V. Simpson, was under the impression that the latter was entitled at the time to the corpus of the estate, and that that was the proper way to do it. Upon the face of all these records the error was apparent, and the master treated it as appearing upon the face of the account. I am of opinion that, if there was an error committed by him, it was in this branch of the case. If the court can look no further than to the charge itself, then perhaps an error was committed. Looking at the whole transaction, the mistake is so obvious that we are disposed to take the master's view of it. It would be against justice and equity not to rectify such a plain mistake.

The case of Stevenson's Appeal, 32 Pa. 318, was decided six years after Riddle's Estate, 19 Pa. 431. That case was in some of its features similar to the present. John Stevenson, the guardian, had died, and the account was stated and filed by his executors. It was confirmed on the 24th of March, 1856, and on the 18th of September the petitioners filed their petition for

a review.  They did not allege the discovery of new matter
which they could not by due diligence have produced before the
decree, but, *inter alia,* that certain amounts had been charged to
Susan and Mary Jane Newell, two of the wards; and, it having
been shown that they had not received them, the supreme court
struck them out.  The syllabus of that case is misleading.  A
careful examination of the facts of the case and what was done
by the supreme court, will show that, in order to do justice, facts
*aliunde* were received to show that the account was incorrect on
its face.  There is nothing appearing on the face of the account to
show that the items complained of were erroneous, but it being
apparent from the vouchers in evidence and records that the ex-
ecutors, who are not supposed to have been familiar with the
transaction, but who, as in the present case, had been obliged to
file the account, had made a mistake.  In the present case the
error is manifest from the will and the simultaneous accounts
filed by the administrator, though perhaps not in the item alone
constituting the charge complained of as error, nor in the formal
decree of the absolute confirmation of the account by the court.

We deeply sympathize with Miss Simpson.  Doubtless her
father intended, by requiring security of her guardian, to pro-
tect her interests.  The mistake was in not requiring security of
the executor as such; but this was not done, and it cannot be
helped.  Mr. Clement was only security as guardian, and can
only be held responsible for money that came into the hands of
the guardian as such.  A word for Judge Shipman, the guard-
ian.  There was no evidence that he wasted or squandered the
money of his ward in the offensive sense in which those terms
are generally understood.  He was a kind-hearted and genial
man, and doubtless the ward's father esteemed him as such.  He
would go bail and lend his money to those who asked him.  The
inventory and accounts in evidence filed by his administrator
show that at the time of his death he held notes, judgments, and
other securities against individuals who had become insolvent,
and which were uncollectable, to the amount of about $13,000.
His available personal estate was only about $1,600, and his real
estate realized $4,330.  It is possible that up to the time of his

death he thought himself solvent.   Of course this has nothing to do with the case in hand, but may, for the sake of his credit, throw some light upon the subject, as relating to the allegation of his intentionally wasting or squandering his ward's funds.

[The exceptions to the report of the master are dismissed, the report confirmed, and the account referred back to Franklin Bound, Esq., as auditor, to restate and correct the same in accordance with the report, with power to take and hear evidence and report the facts as to any, and if any what amount of, funds actually came into the hands of the guardian as such.]

This appeal was taken by Mary V. Fish, neé Simpson, who assigned as error that portion of the foregoing decree of the court embraced in brackets.

The case came up for argument in the supreme court at January term, 1885.   When called, it appearing from the record that the auditor to whom the court below had referred the master's report for an account to be restated in accordance therewith had not yet reported, this court refused to hear the argument until the auditor had reported, and a final decree had been made by the court.

The auditor thereafter reported, *inter alia,* as follows:

"The decree of the court sustaining the original report of the master (to which this report is merely supplementary), and dismissing the exceptions filed thereto, imposes but a single duty upon the master, to wit:   'To report the facts as to any, and if any what amount of, funds actually came into the hands of the guardian as such.'

"No new facts have been produced, and no additional evidence offered, at the present hearing.   The whole case then rests upon the facts as found by the master in his original report and evidence as disclosed in the notes of testimony accompanying the same.   The only evidence before your master that any moneys charged in the accounts filed were received by Abraham Shipman, testamentary guardian of Mary V. Simpson, in his capacity as guardian of said Mary V. Simpson, is the single item, to wit:   '1878, July 14, to cash received from S. P. Wolverton, administrator of Mary Simpson, deceased, Mary V. Simpson, share of said estate, $250.'

"The fact of this payment to Abraham Shipman is not disputed. It was no part of the estate he represented as executor. It was the share or interest of his ward in the estate of a deceased aunt, and he received and receipted for it as such, as her guardian. The facts found and stated in the master's report substantially show that the money received by Abraham Shipman from the testator's estate came into his hands as executor, and that the payments and disbursements made by him and credited on the credit side of the guardian account filed by his administrator, Ira Shipman, were made with money received in his capacity of executor. If your master is correct in his findings of fact and rulings in the master's report, then the item of $250 is the only item or sum of money with which Abraham Shipman can be charged in his capacity of guardian.

"The auditor finds the following facts:

"First. That Abraham Shipman received on the 14th day of July, A. D. 1878, as the guardian of Mary V. Simpson, the sum of $250, it being his ward's interest or share in the estate of Mary Simpson, deceased.

"Second. That the said Abraham Shipman did not receive any other item or sum of money set out in said guardian's account in his capacity as guardian; nor did he in his lifetime legally account for the item or sum of money received by him as guardian aforesaid, or any part thereof, unless the credits claimed in the guardian account filed by his administrator, Ira Shipman, viz.:

| | |
|---|---|
| .'A. Shipman, guardian, time, trouble, etc........ | $300 00 |
| Ira Shipman, administrator of guardian......... | 25 00 |
| Geo. B. Reimensnyder, attorney............... | 20 00 |
| Lemuel Shipman, register, etc................. | 10 00 |

—can be recognized as legal credits or payments out of said item or sum of money.

"Third. That the sum of $250 was the only money or sum of money received by the said Abraham Shipman in his capacity of guardian of the said Mary V. Simpson.

"Your auditor therefore restates the said guardian's account, in accordance with the foregoing facts, as follows:

"Abraham Shipman, guardian of Mary V. Simpson, a minor child of Jesse M. Simpson, deceased, by Ira Shipman, administrator.

"DR.

| | | |
|---|---|---|
| To amount received from estate of Mary Simpson, deceased | $250 | 00 |
| Interest from July 14, 1878, to date of audit... | 115 | 00 |
| | $365 | 00 |
| By credits claimed in account filed by Ira Shipman, administrator, as follows, to wit: | | |
| A. Shipman, guardian, time, trouble, etc. | $300 | 00 |
| Ira Shipman, administrator of guardian | 25 | 00 |
| Geo. B. Reimensnyder, attorney, etc. | 20 | 00 |
| Lemuel Shipman, register | 10 | 00 |
| | $355 | 00 |

Cost of Audit.

| | | |
|---|---|---|
| Franklin Bound, auditor | $25 | 00 |
| Urias Bloom, recording report | 5 | 00 |
| Urias Bloom, certificate, etc. | 3 | 25 |
| | $33 | 25" |

On the hearing in the court below, the exceptions of Mary V. Simpson to the above report were dismissed, and appellant alleged as additional error:

1. The action of the court in making the following decree: "The principal question intended to be raised by the parties in this case has been determined in the report of the master, and the opinion of the court filed November 10, 1884, deciding that the account filed by Ira Shipman, administrator, being the guardian's account, should be reviewed and restated,—the present account being restated in accordance with the said report of the master and opinion of the court, the exceptions are dismissed and the report of the auditor confirmed."

2. The action of the court in dismissing the exceptions to the report of the auditor and the account as restated, and in confirming the same.

*J. Nevin Hill,* and *L. H. Kase,* for appellants.—A bill of review as a matter of right can be had only: (1) For error of law appearing in the body of the decree; (2) for new matter which has arisen after the decree; and (3) it may be allowed *ex gratia* for new evidence as to facts subsequently discovered, which could not have been procured by due diligence before; the plaintiff must show that he has been diligent and not negligent. Green's Appeal, 59 Pa. 235; Hartman's Appeal, 36 Pa. 70; Stevenson's Appeal, 32 Pa. 318.

Plaintiff's bond in evidence before the master can have no effect whatever in this cause, except to show his right to a bill of review in the proper case. This is what is decided by the cases of Bishop's Estate, 10 Pa. 469, and Hartz's Appeal, 2 Grant, Cas. 83.

A guardian or executor must use the same care and management that a prudent man would exercise in his own affairs; he must act for his ward, not for himself. Hughes's Appeal, 53 Pa. 500; Finney's Appeal, 37 Pa. 323; Will's Appeal, 22 Pa. 325; Jack's Appeal, 94 Pa. 367.

*S. P. Wolverton* for appellee.

OPINION BY MR. JUSTICE STERRETT:

For reasons given in the report of the learned master, and which it is unnecessary here to repeat or further elaborate, there was no error in entertaining the petition for review, nor in referring the account to an auditor to restate and correct the same, and report what amount of funds, if any, actually came into the hands of the testamentary guardian.

The auditor found as a fact that in July, 1878, the guardian received $250, his ward's share or interest in the estate of Mary Simpson, deceased, and that this was all that ever came into his hands as guardian. Charging him with interest on that sum made the entire debit side of the account $365. There is no evi-

dence tending to show that he should have been charged with any other or greater sum. The only question is: What should be deducted from the fund so found to be in his hands? The credits of $25, to the administrator by whom the deceased guardian's account was filed, $20, to his attorney for stating account, etc., and $10, register's fees, amounting in all to $55, appear to be properly chargeable on the fund; but we see nothing to justify the allowance of $300, as compensation of time, trouble, etc., of the deceased guardian. If a person other than the guardian had been executor, it would have been the duty of the guardian to see that the estate was properly settled, and the share to which his ward was entitled securely invested. The fact that he undertook to act in the dual capacity of executor and testamentary guardian did not lessen his duty as either. True, it was through his dereliction of duty as executor that the funds of the estate were lost and thus never came into his hands as guardian, but that does not excuse his supineness as guardian. To allow compensation for time, trouble, etc., as guardian, would, under the circumstances, be rewarding palpable neglect of duty.

Decree reversed, and it is now adjudged and decreed that there is due from the estate of Abraham Shipman, late guardian of Mary V. Simpson, $310, with interest from March 18, 1886, and that the same be paid to said Mary V. Simpson, now Fish; and it is further ordered that the costs, including costs of audit, be paid by the appellee.